Filed Sept. 26, 1888.

---

No. 13,376.

## THOMPSON ET AL. *v.* PECK ET AL.

FRAUD.—*Sale of Personal Property.— Voidable Contract.—Rescission.—Remedy of Vendor.*—Although a sale of property is induced by fraud, the contract is not void but voidable upon the election of the vendor. He may elect to rescind the contract, by returning or offering to return whatever of value he may have received and reclaim his property, or he may retain the consideration and treat the bargain as subsisting.

REPLEVIN.— *When Maintainable for Goods Fraudulently Obtained. — Disaffirmance of Contract.— Vendor Must Restore Purchase-Price Received.*—While the commencement of an action to reclaim property, the possession of

which has been obtained by fraud, is ordinarily a sufficient disaffirmance of the contract, where the vendor has received nothing of value, yet in case money has been paid, or the purchaser's notes have been received, replevin can not be maintained for the recovery of the property, while the vendor retains the money or notes for the purchaseprice.

SAME.—*Strictly Law Action.—Bringing Notes Into Court.*—Replevin is strictly an action at law, in which the right of recovery must exist at the time the action is commenced. It can not be created by bringing notes into court as in an equitable suit for rescission, and offering to surrender them as the court may direct.

FRAUD.—*Fraudulent Conduct.— What Sufficient to Avoid Sale.*—To avoid a sale on the ground of fraud, after the goods have come fully into the possession of the buyer, apparently in the ordinary course of his business, it is not sufficient to show that the purchaser was insolvent when the goods or any of them were purchased, and that he knew his debts exceeded his assets. There must have been some artifice or trick, false pretense or fraudulent suppression of the truth, which enabled the purchaser to obtain possession, and it must also appear that he intended at the time not to pay for the goods.

From the Johnson Circuit Court.

*G. M. Overstreet, A. B. Hunter, R. M. Miller* and *W. H. Barnett,* for appellants.

*S. P. Oyler, W. A. Johnson* and *Smith, Kellogg & Wells,* for appellees.

MITCHELL, J.—This was an action in replevin to recover the possession of personal property, consisting of ready-made clothing of the alleged value of $5,000, of which the plaintiffs claimed they were the owners and entitled to the possession, and which they charged that the defendant wrongfully detained from them to their damage, etc.

The complaint was in three paragraphs, and while the second and third assumed to set forth the particular manner in which the defendants obtained possession of the goods in controversy, they are nevertheless complaints in replevin, and in legal effect the same as the first paragraph.

It appeared that the plaintiffs were partners, doing a whole-

sale or jobbing business in the city of Syracuse, New York, under the firm name of W. S. Peck, Bro. & Co., while the defendants, Dalmbert & Sergeant, were conducting a general retail store at Edinburgh, Indiana. The latter firm became customers of the former in 1882, after which they purchased bills of goods varying in amounts several times each year, generally at the solicitation of one of the plaintiffs, who was the travelling salesman of the firm.

The evidence tended to show that the plaintiffs sold the defendants a bill of goods on the 24th day of July, 1884, amounting to $1,987, and that they sold them another bill in January, 1885, amounting to $1,824, another of $1,471.50 in July, 1885. For the bill sold in July, 1884, including some interest accrued on the account, the plaintiffs received three promissory notes, executed by the defendants, Dalmbert & Sergeant, payable in a bank in this State, for $666 each, dated the 27th day of March, 1885, due in two, three and four months, respectively. Two of these notes were subsequently paid. The other has not been paid. For the goods sold in January, 1885, three notes were executed by Dalmbert & Sergeant, dated November 1st, 1885, due in two, three and four months, respectively. The bill sold in July, 1885, remained in an open account. On the 25th day of November, 1885, Dalmbert & Sergeant, finding themselves in failing circumstances, and unable to pay their debts, after having the day previous given a chattel mortgage on their stock, and otherwise secured several of their creditors, made a voluntary assignment under the statute for the benefit of all their creditors, the appellant Thompson being named in the deed as assignee.

They were indebted to the plaintiffs at the time of the assignment, their indebtedness being evidenced by one of the notes given in settlement of the July, 1884, purchase, and by the three notes given in settlement of the purchase made in January, 1885, and by the open account for the goods purchased in July, 1885. The plaintiffs asserted the right to re-

cover all of the goods sold by them to Dalmbert & Sergeant, on either of the dates above mentioned, so far as such goods remained in the latter's possession, and were capable of identification at the date of the filing of the complaint, viz., December 5th, 1885, on the ground that the purchasers were hopelessly insolvent, and had no reasonable expectation of being able to pay, and did not intend to pay, for the goods at the time they were purchased. It appeared that the sheriff, in obedience to the command of the writ of replevin, had seized all the goods sold by the plaintiffs to Dalmbert & Sergeant which remained unsold at the time the suit was commenced. The goods seized were of the value, as found by the jury, of $1,980. The evidence showed that of the goods seized, $261 worth were of the July, 1884, purchase, $538.54 of the January, 1885, purchase, and the residue of the last bill, purchased in July, 1885.

A jury having returned a verdict in favor of the plaintiffs, judgment was given accordingly, over a motion for a new trial. The verdict and judgment affirmed the right of the plaintiffs to recover the unsold goods remaining of each and all the several purchases as above described, notwithstanding the amount of the first two purchases had been settled by the giving of notes by the purchasers, payable in bank, two of which notes had been fully paid, with interest, and notwithstanding there had been no offer to return either the notes given, or the money paid, before the bringing of the suit in replevin.

The appellants contend: (1) That the evidence wholly fails to show that either of the purchases was made under such circumstances as justified a rescission of the contract and a reclamation of the goods; and (2) that even if it be conceded that the goods were fraudulently obtained, with a design not to pay for them, still replevin can not be maintained to recover those embraced by the first and second purchases, without first offering to return the money paid and the notes executed in settlement of the several accounts.

The question embraced in the last proposition arises both on the evidence and upon an instruction given by the court, which instruction was to the effect that if a purchase of goods be effected by means of fraud, the vendor does not, as against the purchaser, lose his title to the goods, and the vendor, in case notes have been given for the purchase-price, may maintain replevin, without having previously tendered the notes, provided they are produced at the trial to be surrendered up.

Without determining whether or not the evidence in the record justifies the inference that Dalmbert & Sergeant knew of, and fraudulently concealed, their insolvency, if they were insolvent, at the time of each purchase, with the present purpose in each instance to obtain goods and not pay for them, it is sufficient to say, even if these points were conceded, a reversal of the judgment must follow nevertheless, because the case was allowed to proceed and was put to the jury upon a theory which can not be approved.

It is well settled that even though a sale of property be induced by fraud, the contract is not void, but only voidable. The title to the property passes to the fraudulent vendee, subject to the right of the vendor, upon discovering the fraud, to elect whether he will rescind the contract by returning, or offering to return, whatever of value he may have received, and reclaim his property, or whether he will retain the consideration and treat the bargain as subsisting. Until the vendor makes his election the contract continues and the title to the property remains in the purchaser as against all the world. *Powers* v. *Benedict*, 88 N. Y. 605.

Where the possession of property has been wrongfully obtained, by means of a voidable contract, and the vendor has received nothing of value, the bringing of an action to reclaim the property is ordinarily a sufficient disaffirmance of the contract. But in case money has been paid, or the purchaser's promissory notes have been received, replevin can not be maintained for the recovery of the property while the vendor retains the money or notes for the purchase-price.

*Moriarty* v. *Stofferan*, 89 Ill. 528; *Deane* v. *Lockwood*, 115 Ill. 490; *Parrish* v. *Thurston*, 87 Ind. 437; *Haase* v. *Mitchell*, 58 Ind. 213.

"One who has been led into a contract upon which he has received something of value can not ignore the contract, however induced, and proceed in a court of law as if the relations of the parties were wholly unaffected thereby. He can not, while retaining its benefits, and thus affirming the contract, treat it as though it did not exist." *Home Ins. Co.* v. *Howard*, 111 Ind. 544.

Replevin is strictly an action at law. The right of recovery must exist at the time the action is commenced. It can not be created by bringing the notes into court, as in an equitable suit for rescission, and offering to surrender them up as the court may direct. As has been seen, there were three separate bills, involving three distinct transactions, each one of which must stand upon its own merits and be governed by the circumstances peculiar to it. The first bill was purchased and the goods delivered more than sixteen months before the purchasers failed. Six months and more after the goods were delivered, the purchasers executed their negotiable promissory notes in settlement of the account. Two of these notes, with the interest, were afterwards paid, and all of the goods except $261 worth had been retailed out before the suit in replevin was commenced. We have been cited to no authority, nor can we conceive of any principle which authorizes the vendors, after such a lapse of time and under such circumstances, to ignore the sale and maintain replevin for such of the goods as remained unsold while retaining the money and note which they received in pursuance of the contract. The plaintiffs can not affirm the contract so as to keep the money and note, and at the same time treat it as-rescinded for the purpose of recovering so much of the property as remains.

The right to recover goods obtained by fraud, or in pursuance of a fraudulent contract, by an action at law, only

exists while the situation of the parties remains such that they can be placed substantially in *statu quo*. If this can not be done, while the party defrauded is not remediless, some other remedy than replevin must be resorted to. *Gould* v. *Cayuga Co. Nat. Bank*, 86 N. Y. 75; *Gould* v. *Cayuga Co. Nat. Bank*, 99 N. Y. 333.

That the purchasers may have been insolvent when the first bill, or any of the other bills, was purchased, and that they may have known that their debts exceeded their assets, did not of itself constitute such a fraud as justified the setting aside of the sale after the goods had come fully and fairly into the possession of the buyers. To avoid a sale after goods have been taken into the possession of the buyer, apparently in the ordinary course of his business, there must have been some artifice or trick, or some false pretense or fraudulent suppression of the truth, which enabled the purchaser to obtain possession of the goods, and it must appear that the latter intended at the time of each purchase not to pay for the goods. And there must have been a complete restoration of whatever of value was received.

The mere fact that the purchasers subsequently executed chattel mortgages upon the property, thereby giving certain of their creditors preference, or that they made an assignment for the benefit of creditors, did not warrant the inference that either of the purchases was made with the design to obtain the goods without paying for them. *Gilbert* v. *McCorkle*, 110 Ind. 215.

Most of the goods covered by the January, 1885, purchase, had been sold in the usual course of retail by the purchasers before they made an assignment for the benefit of their creditors. The January bill had been settled months after it was made, by accepting the purchasers' promissory notes which were negotiable according to the law merchant. This was *prima facie* an extinguishment of the account. If under such circumstances replevin is maintainable at all,

·certainly it can only be after a tender of the notes and a re-scission of the contract.

Since the judgment must be reversed for the reasons already given, we do not examine other questions raised and .argued which can hardly arise again. .

The judgment is reversed, with costs.

Filed Sept. 26, 1888.