### No. 330.

### LEVI ET AL. *v.* KRAMINER ET AL.

FRAUDULENT CONVEYANCE.—*Fraud of Purchaser.—Rescission of Sale.— Recovery of Property.*—If one, knowing himself to be insolvent, purchases property of another upon credit, by falsely representing, or fraudulently concealing, his financial condition, and does not intend to pay for the property, or has no reasonable expectation of being able to pay for it at the time of the purchase, the seller may set aside the sale for the fraud, and recover the property.

FRAUD.—*Question of Fact.—How Proved.*—Fraud is a question of fact, and shall not be presumed, but must be alleged and proved. It is not necessary, however, that fraud be proved by direct, or positive, evidence, but it will be sufficient if facts and circumstances be proved from which it can be fairly inferred.

From the Huntington Circuit Court.

*B. M. Cobb* and *C. W. Watkins*, for appellants.

*T. G. Smith* and *J. C. Branyan*, for appellees.

CRUMPACKER, J.—This action was brought by the appellees to recover the possession of personal property from the appellants.

The first paragraph of complaint alleges, in substance, that in the month of November, 1887, the plaintiffs were partners in the wholesale clothing business, at St. Louis, Missouri, in the firm name of "Kraminer & Printz," and at the same time the defendants, Jacob and Henry Levi, were partners in the retail business, at Huntington, Indiana, in the firm name of "Levi & Son;" that said latter firm was insolvent, and unable to pay its debts, of which fact the plaintiffs were ignorant, and on the 27th day of November, 1887, the members of said insolvent firm falsely and fraudulently represented to the plaintiffs that they were doing a prosperous business, and were solvent; and the plaintiffs, relying upon the truth of such representations, were thereby induced to sell and deliver to said Levi & Son a bill of goods amounting to $510.28, upon four months credit; that shortly

after obtaining said goods said Levi & Son pretended to sell and transfer to the defendant Locheim, their entire stock in payment of a debt they claimed to owe him, and within a few weeks thereafter said Locheim pretended to sell and transfer said stock to the defendant Marx. It is further alleged that said Levi & Son purchased said goods of plaintiffs fraudulently, and without any intention of paying for them, and they entered into a fraudulent conspiracy and colluded with their co-defendants to cheat and defraud plaintiffs, and the sale to Locheim, and from him to Marx were made in furtherance of such fraudulent intent and purpose.

The property is particularly described in the complaint, and judgment is asked for the possession thereof, and damages for its detention.

The second paragraph is an ordinary complaint for replevin.

A demurrer was filed to each paragraph, which was overruled, and the defendants answered separately, and the cause was put at issue and tried by a jury. A verdict was returned in favor of the plaintiffs, upon which judgment was rendered.

The defendants moved for a new trial, which was refused, and they appeal.

The first question we are required to decide, in the order presented in the record, arises upon the decision of the court in overruling the demurrer to first paragraph of complaint.

If one, knowing himself to be insolvent, purchases property of another upon credit by falsely representing, or fraudulently concealing, his financial condition, and does not intend to pay for the property, or has no reasonable expectation of being able to pay for it at the time of the purchase, the seller may set aside the sale for the fraud, and recover the property. *Tennessee, etc., Co.* v. *Sargent, ante,* p. 458; *Curme, Dunn & Co.* v. *Rauh,* 100 Ind. 247; *Brower* v. *Goodyer,* 88 Ind. 572; *Talcott* v. *Henderson,* 31 Ohio St. 162;

*Belding* v. *Frankland,* 8 Lea, 67 ; *Burrill* v. *Stevens,* 73 Me. 395 ; *Oswego Starch Factory* v. *Lendrum,* 57 Iowa, 573.

Such sale, however, is voidable only, and if the fraudulent purchaser should sell the property to one ignorant of the fraud, for a valuable consideration, such innocent purchaser would obtain an indefeasible title thereto against the original vendor. *Moore* v. *Moore,* 112 Ind. 149 ; *Claflin* v. *Cottman,* 77 Ind. 58 ; *Sharpe* v. *Davis,* 76 Ind. 17 ; 2 Bigelow Fraud, p. 405.

In the complaint under consideration, it is clearly shown that the purchase by Levi & Son from the appellees was fraudulent, and that the other appellants were parties to the fraud, and consequently are not entitled to protection in their purchases. We think the court committed no error in overruling the demurrer.

It is very earnestly insisted, upon behalf of appellants, that the verdict is not supported by sufficient evidence.

The evidence fairly sustains the following facts : When Levi & Son bought the goods in controversy, they were insolvent, and had no reasonable expectation of paying for them, which they concealed from the appellees. In a few weeks after the purchase they sold and transferred their entire stock of goods to Locheim, who was in business at Philadelphia, Pa., in payment of a debt they claimed to owe him. Locheim at once put the stock in the charge of Marx, and in about two weeks thereafter sold and transferred the same to him. Jacob Levi, the senior member and principal partner of the firm of Levi & Son, was a brother-in-law to Marx, and they had formerly been in partnership together in the dry goods and clothing business at Huntington, and in March, 1885, while so in business, they gave their joint note to Locheim for $9,000, due ten days after date. On the day the note was due it was sued, and the makers appeared and confessed judgment for $9,814.86. Shortly thereafter Levi & Marx dissolved partnership, and each went into business on his own account, and each gave his individual notes to

Locheim for one-half of the judgment, payable monthly, and ranging in amounts from $150 to $222.50. They paid a number of the notes, but the judgment stood against them, and no credits were given thereon, and Locheim kept an execution for the entire judgment constantly in the hands of the sheriff, with instructions not to levy until specially directed to do so.

In the meantime Locheim assured Levi and Marx that they would not be disturbed by the execution. At the time of the sale of the stock to Locheim he claimed that Levi owed him about $3,800 upon his half of the judgment. The stock was worth about $2,500, but Locheim took it in full satisfaction of his claim against Levi, and after the transaction was closed he made Levi's wife a present of $1,000. When Marx bought the stock of Locheim he sold a portion of it at public auction, and sent the balance over to Rochester, Indiana, where he opened another store, and had Jacob Levi go over there to clerk for him in the store, but made no arrangement with him whatever relative to the salary he should receive.

Locheim claimed to be solicitous about being able to collect his judgment, and gave this as a reason for keeping an execution alive upon it; yet, in the meantime, he sold goods to Levi and Marx, individually, upon credit, without security, and recommended them to other wholesale dealers as worthy of credit. He also frequently indorsed for them.

There were many other circumstances in evidence, unimportant in themselves, but which, taken together, gave a suspicious coloring to the whole transaction.

Fraud is a question of fact, and shall not be presumed, but must be alleged and proved. *Caldwell* v. *Boyd*, 109 Ind. 447; *Stix* v. *Sadler*, 109 Ind. 254; *Powell* v. *Stickney*, 88 Ind. 310.

It is not necessary, however, that fraud be proved by direct, or positive, evidence, but it will be sufficient if facts and circumstances be proved from which it can be fairly in-

ferred.    *Stanfield* v. *Stiltz,* 93 Ind. 249 ; *Brower* v. *Goodyer, supra; Parrish* v. *Thurston,* 87 Ind. 437.

In fact this is about the only manner in which fraud can be proved, because parties who deliberately engage in a fraudulent enterprise can not be depended upon, as a rule, to divulge it in a court of justice, and such transactions are usually conducted without the presence of other witnesses.

We think the jury was justified in the conclusion that the appellants were all guilty of fraud in attempting to obtain the appellees' property without paying for it.

The court admitted in evidence, at the trial, certain newspaper advertisements, published at the instance of Marx, advertising the stock for sale at a sacrifice, as a " bankrupt stock." Marx claimed that he bought the goods of Locheim to prevent their sale at a sacrifice, and thus injure the local market. This evidence tended to disprove his testimony upon this point, by showing that he at once advertised and sold the stock in the same manner he pretended to be fearful that Locheim would do.

Furthermore, the advertisements tended to prove that Marx was preparing to sell this stock at auction, as his own, several days before he had any talk or correspondence with Locheim looking toward its purchase.

Complaint is made of some of the instructions given by the court, but we have read them all over carefully, and do not think they are objectionable.

When read together, in the light of the evidence, they fairly state the law applicable to the case.

There is no error in the record for which the judgment should be reversed. It is, therefore, affirmed.

Filed Oct. 29, 1891.