Filed Feb. 1, 1895.

---

No. 1,437.

## LEVI ET AL. *v.* BRAY ET AL.

ASSIGNMENT OF ERRORS.—*When Sufficiently Signed.*—An assignment of errors, signed "Dunn and Lowe, East and Miller, for appellants," is sufficiently signed.

APPELLATE COURT PRACTICE.—*Brief.*—*When by all Appellants.*—A brief filed by appellant's attorneys "for appellants," although the title thereof does not contain the names of all the appellants, is the brief of all the appellants.

SALE.—*Induced by Fraud.*—*Title.*—*Purchaser of Vendee, in Good Faith, Without Notice.*—Where a sale of goods is induced by fraud, the title to the property remains in the vendee, until the vendor elects to rescind, and a sale by the vendee for value to a third person who is ignorant of the fraud, vests a good title in the latter even against the original vendor.

SAME.—*Fraud.*—*Knowledge by Purchaser of His Insolvency.*—*Title.*—*Setting Aside Sale.*—The fact that one who purchases goods may know when he makes the purchase that his debts exceed his assets, does not of itself constitute such a fraud as will justify the setting aside of the sale at the instance of the seller, after the goods have come into the possession, and under the control, of the purchaser; much less can a recovery be had when they have been purchased and passed into the possession of an innocent third person.

Levi *et al. v.* Bray *et al.*

SAME.—*Fraud Sufficient to Set Aside a Sale of Goods.*—To constitute fraud sufficient to set aside a sale of goods, the purchase must have been perfected through some artifice, trick, false pretense, misstatement of the facts, or suppression of the truth, which enabled the purchaser to obtain possession of the goods without consideration, he intending, at the time of the purchase, not to pay therefor.

SAME.—*Right of Purchaser to Sell or Mortgage Goods.*—*Preference of Creditors.*—*Fraud.*—Having acquired possession; of the goods, the purchaser may make any honest disposition of them he may see fit. He may sell them or mortgage them in whole or in part to secure any debt which he may owe, and in so doing he may prefer one creditor to another, mortgage the goods purchased from one to pay the debt of another, and such a preference is not a fraud in law, even though the purchaser knows, at the time he sells or mortgages the goods, that he is in failing circumstances and contemplates making an assignment.

DEBTOR AND CREDITOR.—*Preference of Creditor.*—A debtor may prefer a creditor provided the preference is made in good faith.

FRAUD.—*A Question of Fact.*—*Can Not Be Inferred as a Matter of Law.*— Fraud is a question of fact to be found as such, and it can not be inferred as a matter of law from other facts or circumstances.

From the Lawrence Circuit Court.

*M. F. Dunn, S. B. Lowe, J. R. East* and *R. G. Miller,* for appellants.

*T. J. Brooks, J. W. Willard* and *W. F. Brooks,* for appellees.

Ross, C. J.—This was an action in replevin brought by the appellees against the appellants, the appellees alleging that they were the owners and entitled to the immediate possession of a stock of goods, specifically described, of the value of $471.85, and demanding judgment for possession.    There was a trial by the court and a special finding of the facts made with conclusion of law thereon.    To the conclusion of law upon the facts found, the appellants excepted.

The errors assigned on this appeal question the sufficiency of the facts found to sustain the conclusion of law and the judgment thereon.

The appellees insist that no questions are presented to this court for consideration for the reasons, first, "that there is no assignment of error herein," and, second, "that there is no sufficient assignment of error herein."

The appellees contend that the assignment of errors is not signed by the appellants, neither is it "signed by appellants' attorneys *as such.*"

To sustain this contention they cite the case of *State, ex rel.,* v. *Delano,* 34 Ind. 52. In that case the court says: "The assignment is in the nature of a declaration or complaint, and, therefore, requires the full names of the parties as much as an original complaint, and must be signed by the appellants or their attorneys *as such.*"

The assignment of errors which the court was then considering did not give the names of any of the parties, either appellants or appellees, and was signed "B———— & C————."

The assignment before us contains the names in full of all of the parties to the appeal, both appellants and appellees, and is signed: "Dunn and Lowe, East and Miller, for appellants." The record shows that "J. R. East & M. F. Dunn" were the attorneys in the court below for the defendants, who are the appellants here. We think the assignment sufficient so far as the naming of parties thereto and the manner of signing the same are concerned.

The further objections that only part of the appellants have filed a brief and that no error has been assigned calling in question a ruling of the court below, to which the appellants saved an exception, are both untenable. The brief filed by the appellants, although it does not contain the names of all of the appellants in the title of the cause, is signed by their attorneys as for the appellants and was filed in this court as such. As to the latter objection the first error assigned in the joint assign-

ment raises the question as to the correctness of the conclusions of law upon the facts found.

The facts found by the court are as follows:

During the years 1890, 1891 and 1892 Hattie L. Wolf and Max B. Kaufman were engaged in the clothing business under the firm name of Wolf & Kaufman; that Hattie L. Wolf is the daughter of the appellant Adolph Levi, and is the wife of Lee Wolf, and that her husband, as her representative, assisted in the management of the firm of Wolf & Kaufman; that the appellees, prior to June 23, 1893, had sold goods to the firm of Wolf & Kaufman, which had not been paid for, and on that day payment had been urged, whereupon Lee Wolf, the appellant Hattie L. Wolf's husband, represented to appellees that the firm of Wolf & Kaufman was solvent, and had accounts outstanding sufficient to pay all of their indebtedness, which statements were accepted as true by appellee, and they thereupon importuned Mr. Wolf to buy more goods from them, but he told them "that they did not want to buy."

On the 8th day of July, 1893, one of the appellee's traveling salesmen called on Wolf & Kaufman at their place of business, and took an order from them for goods amounting to $471.85, being the goods mentioned and described in the complaint, which were shipped by appellees to said firm on receipt of the order from the salesman; that these goods were received by the firm of Wolf & Kaufman, and were at once commingled with the stock then owned by said firm which was of the value of about $19,000; that on the 5th day of October, 1893, Wolf & Kaufman executed to Adolph Levi a chattel mortgage on said stock of goods including those purchased from appellees, to secure a *bona fide* indebtedness of $19,000, of which amount "$1,000 was due and owing Josephine Kaufman, and $6,000 to various parties

for which notes had been given with defendant (appellant) Levi as surety, and $12,000 was directly due Levi,'' and that all of the indebtedness to Levi, except $787, was in existence on the 23d day of June, 1893, the time when Lee Wolf made the representations to appellees of the solvency of the firm of Wolf & Kaufman.

On the 9th day of October, 1893, the appellees instituted this action, having previously demanded of Wolf & Kaufman ''a rescission of the sale and return of the goods''; that the goods were seized by the sheriff on that day, and are of the value of $330; that nothing has ever been paid for the goods; that on ''the 10th day of October, 1893, said Levi, by a written bill of sale, purchased said stock and took possession of the same,'' being in satisfaction of the mortgage held by him thereon, he having no knowledge, at the time of the taking of his mortgage, that the appellees had or claimed any interest in the goods.

It is further found that the statements made by Lee Wolf to the appellees were false, that the firm was insolvent at that time, nevertheless they continued doing business and to buy goods; that the appellees, when they accepted the order from their salesman and shipped the goods to Wolf & Kaufman, they believed the statements of said Lee Wolf concerning the solvency of said firm to be true, and upon the faith thereof sold the goods.

It is also found that no representations were made by said firm as to their solvency at the time they gave appellees' salesman the order for the goods.

There are other matters embraced in the court's finding which we have considered it unnecessary to set out here, having endeavored to set out only so much as was pertinent to the issues and necessary to a determination of the rights of the parties.

Upon the facts found, the court made the following conclusions, viz:

"As conclusions of law from the foregoing facts, I find that the plaintiff is entitled to the possession of the goods described in the complaint, and that the defendant Levi did, at the time of the commencement of this action, and does now, unlawfully detain the same from plaintiff, and that said goods are of the value of $330; that plaintiff is entitled to a judgment against the defendant for the possession of said goods and for costs against all the defendants."

The appellees sought to recover from appellant Levi goods sold by them to the firm of Wolf & Kaufman, and by the latter mortgaged to Levi, and afterwards turned over to him in satisfaction of their indebtedness to him, upon the theory that no title ever vested in Wolf & Kaufman.

We need not determine whether or not the representations of Lee Wolf as to the solvency of the firm of Wolf & Kaufman, were binding upon the firm, for it is well settled that even though a sale of property is induced by fraud the title vests in the vendee, subject to the right of the vendor, upon discovering the fraud, to rescind. Until the vendor elects to rescind, the title to the property remains in the vendee, and a sale by him for value to a third person who is ignorant of the fraud, vests a good title in the latter, even against the original vendor.

That one who purchases goods may know when he makes the purchase that his debts exceed his assets, does not of itself constitute such a fraud as will justify the setting aside of the sale at the instance of the seller after the goods have come into the possession and under the control of the purchaser. *Thompson* v. *Peck*, 115 Ind. 512. Much less can a recovery be had when they have

been purchased and passed into the possession of an innocent third person.

The representations relied upon by the appellees as the basis for their right to recover, were made not for the purpose of inducing appellees to sell the goods in controversy, but were made to mollify appellees' apprehensions so that they would not urge the payment of the balance then due them from Wolf & Kaufman. To constitute fraud sufficient to set aside a sale of goods the purchase must have been perfected through some artifice, trick, false pretense, misstatement of the facts or suppression of the truth which enabled the purchaser to obtain possession of the goods without consideration, he intending at the time of the purchase not to pay therefor.

Having acquired possession over the goods the purchaser may make any honest disposition of them he may see fit. He may sell them or mortgage them in whole or in part to pay or secure any debt which he may owe. In so doing he may prefer one creditor to another, mortgaging the goods purchased from one to pay the debt of the other, and such preference is not a fraud in law, and it does not change the law even though at the time he sells the goods or executes the mortgages the purchaser or mortgagee knows that he is in failing circumstances and contemplates making an assignment, and even though such sale or the executing of the mortgage may hinder or delay other creditors in the collection of their claims.

"In the absence of statutory prohibition, it is neither a legal fraud nor a moral wrong for a creditor to obtain payment of, or security for, an honest claim, even though he knows that others, equally deserving, will be thereby deprived of obtaining payment or security for their claims. Nor is it legally or morally wrong for a debtor to pay, or secure to one or more of his creditors, that which is

their due, even though he thereby disables himself from paying or securing other claims equally meritorious." *Gilbert, Assignee,* v. *McCorkle,* 110 Ind. 215.

It is well settled, therefore, that a debtor may prefer a creditor, provided the preference is made in good faith. There is nothing in the finding of the court in this case impeaching the good faith of the parties in the execution and acceptance of the mortgage under which the appellant, Levi, acquired possession and claims title to the property in controversy.

Under the statute, sections 6649, R. S. 1894, fraud is a question of fact, to be found as such, and it can not be inferred as a matter of law from other facts or circumstances. *Phelps* v. *Smith,* 116 Ind. 387; *Farmers' Loan and Trust Company* v. *Canada, etc., R. W. Co.,* 127 Ind. 250.

While circumstances are valuable as evidence of and from which the triors of fact may draw the inference of fraud, the circumstances can not take the place of, and answer for, a finding of the fact that fraud existed. *Stix* v. *Sadler,* 109 Ind. 254.

The facts found by the court did not warrant the legal conclusion drawn by the court; hence, the judgment will have to be reversed.

Judgment reversed, with directions to grant a new trial.

Filed Feb. 1, 1895.