## The John H. Hibben Dry Goods Company v. Hicks, Assignee.

[No. 3,411. Filed March 12, 1901. Rehearing denied May 15, 1901.]

REPLEVIN.—*Sales.—Fraud.*—In an action by the seller to replevin goods the findings showed that the goods were sold at various times in the ordinary course of business and delivered to the purchaser to be sold by her at retail; that the purchaser made part payment in cash, and gave her note payable in bank for the balance, which was accepted by the seller and the account credited therewith. A number of evidentiary facts were found relating to a statement made by the purchaser as to her financial condition, but the ultimate fact of fraud and the ultimate fact that she did not intend to pay for the goods were not found. *Held,* that the court properly rendered judgment for defendant.

Appeal from the Lawrence Circuit Court. *Affirmed.*

*C. C. Matson* and *J. Giles,* for appellant.

*H. C. Duncan* and *I. C. Batman,* for appellee.

WILEY, J.—Action in replevin, in which appellant was plaintiff. Answer in three paragraphs and reply in one paragraph. Trial by the court; special finding of facts and conclusions of law.

Every question discussed may be decided and settled under the assignment of error which challenges the conclusions of law. The facts found which are essential to the decision of the case are as follows: Appellant is a corporation under the laws of Ohio, engaged in wholesaling of dry goods; prior to May 1, 1897, one Jennie Tincher, appellee's assignor, had been engaged in carrying on a general store at Bloomington, Indiana, and on said day sold the same. Said Jennie was the wife of William H. Tincher, who had the management of her store at Bloomington, and afterwards

at Limestone, where she again engaged in business. June 4, 1897, said William wrote and mailed a statement to appellant of the financial condition of said Jennie, and signed thereto her name. At that time she was contemplating engaging in business at Limestone, Indiana. The statement above mentioned was made with the knowledge of Jennie, to enable her to obtain credit with appellant. In said statement it was represented that she had real estate worth $3,500; money on hand, $500; goods, accounts, and notes, of the value of $2,100. Said statement did not mention her liabilities. This statement was made at the request of appellant, and it relied on the same in the sale of goods to her, and it had no knowledge as to its truth or falsity. Said Jennie did not have any real estate in her own name, but was the owner of a judgment of foreclosure of a first mortgage of the value of $3,500 on real estate owned by her husband. On this decree a sale had been made, upon which a deed was issued. She had not parted with her inchoate interest in said real estate. August 20, 1897, said Jennie purchased a store in Limestone, began the business of general merchandising, and continued the same until December 17, 1897, when she made a general assignment under the laws of this State for the benefit of creditors. The appellee, the assignee under said assignment, accepted the trust, took possession of the property assigned, including the goods seized by appellant under its writ of replevin, and entered upon the discharge of his duties as such assignee. Between August 17th and December 10, 1897, appellant, at various times, sold and delivered to Jennie Tincher dry goods of the aggregate value of $3,522.31, a part of which was seized by the sheriff by the writ of replevin. At various times between the last two named dates said Jennie Tincher made payments to appellant aggregating $2,031.98, and on December 9, 1897, in settlement of the account, she executed her note for $1,490.33, payable to appellant, due fifteen days after date, negotiable and payable at a bank within this State. At the time said note was executed, she

thought the amount named therein was all she owed appellant. Said note was mailed to and received by appellant, and the amount thereof credited to her on its books. When she executed said note she did not have any funds in the bank with which to pay it, and had no money with which to pay it when it became due. About the time said note was executed, said Jennie sold to one Hert, a merchant in Limestone, all clothing, men's furnishing goods and hats owned by her, for $700. After making the statement of her financial condition above referred to, said Jennie, without giving notice to appellant, and before she purchased any goods of it, transferred and assigned all her interest in all the real estate owned by her, or in which she had any interest. When she made said statement, she was indebted to her husband's brother in the sum of $500 for borrowed money. No part of the money paid by said Jennie to appellant was ever paid or tendered to her or her assignee, and the note executed to appellant was never tendered to her or her assignee, until appellee had filed his answer in this action, and appellant had filed its reply, and said note was tendered when the reply was filed. December 22, 1897, appellant began this action, and on the same day the sheriff, by virtue of the writ of replevin, seized the goods in controversy. The goods thus seized included parts of all the goods sold to said Jennie by appellant and included all such goods which were then unsold. By virtue of the suit and the bond given by appellant, said goods were placed in its possession, and it has disposed of them. Said goods were of the value of $1,340.65. Upon these facts, the court concluded that the law was with appellee, and judgment was entered accordingly. Appellant excepted to the conclusion of law.

Appellant relies for reversal upon the proposition that appellee's assignor obtained the goods in controversy by fraud and misrepresentation, and that by reason thereof it had a right to rescind the contract and recover the property

sold. It is urged that the fraud grew out of the statement sent appellant for which credit was given. Under the authorities in this State, upon the facts found, the position of appellant can not be maintained. Appellee's assignor purchased of appellant various bills of goods at different times in the ordinary course of business, to be sold by her at retail. The goods so purchased were delivered to her. Under these facts she became the absolute owner of the property as against the whole world, and also as to the vendor, until there was a disaffirmance and rescission of the contract. *Peninsular Stove Co.* v. *Ellis,* 20 Ind. App. 491; *Levi* v. *Kraminer,* 2 Ind. App. 594; *Powers* v. *Benedict,* 88 N. Y. 605; *Thompson* v. *Peck,* 115 Ind. 512, 1 L. R. A. 201.

In this case there is no finding of the facts that at the time of the purchase appellee's assignor knew that she was unable to pay for the goods, nor that she intended not to pay for them. Neither is it found as a fact that she obtained the goods by fraud, or upon fraudulent representations. A number of evidentiary facts are found relating to a statement made by her as to her financial condition, but the ultimate fact of fraud and the ultimate fact that she did not intend to pay for the goods are not found. It was essential to appellant's right to recover that these ultimate facts be found. The rule prevails in this jurisdiction that where a special finding is made, if any fact essential to a recovery is not specially found, or the finding is silent as to a material fact necessary to be found, it is taken as a finding against the party having the burden of proving such fact. *Metropolitan, etc., Co.* v. *Bowser,* 20 Ind. App. 557; *Relender* v. *State, ex rel.,* 149 Ind. 283; *Durflinger* v. *Baker,* 149 Ind. 375; *Levi* v. *Allen,* 15 Ind. App. 38; *Wysong* v. *Nealis,* 13 Ind. App. 165; *Heiney* v. *Lontz,* 147 Ind. 417; *Archibald* v. *Long,* 144 Ind. 451.

Fraud is a question of fact and must be found as such, it not being sufficient to set forth in a special finding of facts

the facts or circumstances from which fraud may be presumed. *Farmers, etc., Co.* v. *Canada, etc., R. Co.,* 127 Ind. 250, 11 L. R. A. 470; *Parks* v. *Satterthwaite,* 132 Ind. 411; *Morgan* v. *Worden,* 145 Ind. 600; *Selz, etc., Co.* v. *Mayer,* 151 Ind. 422; *Stout* v. *Price,* 24 Ind. App. 360.

In its reply appellant set up facts which in law would constitute fraud on the part of appellee's assignor. Thus fraud became a triable issue, and was therefore an essential fact to be found before appellant could recover.

In *Caldwell* v. *Boyd,* 109 Ind. 447, the court said: "In a special finding of facts, in a case where alleged fraud is one of the facts in issue, the fact itself must be found by the court, and not the evidence or so-called badges of fraud."

In *Farmers, etc., Co.* v. *Canada, etc., R. Co., supra,* it was said: "While there are circumstances indicative of fraud, there is no finding that there was fraud in fact, and hence the complaining appellees are not entitled to judgment, upon the ground that the transaction was a fraud upon their rights. It is settled by our decisions that fraud must be found and stated as an inferential or ultimate fact, and that it is not sufficient to state badges of fraud, or the evidences of fraud, in a special finding."

In the case of *Wilson* v. *Campbell,* 119 Ind. 286, the court says: "Fraud is a question of fact and not of law. * * * Where fraud is essential to the existence of a cause of action, it must be found and stated in the special finding as a substantive fact or the plaintiff will suffer defeat. * * * It is not enough that the special finding contains evidence tending to establish fraud, for the law requires that the ultimate fact be stated."

The case of *Thompson* v. *Peck,* 115 Ind. 512, is directly in point. It was there held that though the sale of property is induced by fraud, the contract is not void, but voidable upon the election of the vendor, and that such vendor may elect to rescind the contract by returning or offering to return whatever of value he may have received and reclaim

his property. It was further held that where money had been received by the vendor, or the vendee's notes have been taken and received by the vendor, the latter can not maintain replevin for the recovery of the property, while he retains the money or the notes, for the purchase price. In that case the purchasers had made an assignment for the benefit of creditors. Judge Mitchell, speaking for the court said: "We have been cited to no authority, nor can we conceive of any principle which authorizes the vendors, after such a lapse of time and under such circumstances, to ignore the sale and maintain replevin for such of the goods as remained unsold while retaining the money and note which they received in pursuance of the contract. The plaintiffs can not affirm the contract so as to keep the money and note, and at the same time treat it as rescinded for the purpose of recovering so much of the property as remains."

The holding in that case is decisive here. It is found as a fact that appellee's assignor executed to appellant her note payable in a bank in this State for the unpaid balance of her account. Appellant accepted this note, credited the account in the sum thereof and retained the note until long after this action was commenced. The acceptance of a note governed by the law merchant is presumptively an extinguishment of an antecedent debt. *Mason* v. *Douglas,* 6 Ind. App. 558.

In *Keck* v. *State, ex rel.,* 12 Ind. App. 119, it was held that the taking of a note payable in bank of this State operates *prima facie* as a payment of the debt for which it was given, and the burden is upon the creditor to show that it was not so received.

In *Alford* v. *Baker,* 53 Ind. 279, it was held that giving a negotiable note for a precedent debt, will operate as a discharge of such debt, unless it be shown that the parties did not intend that it should have that effect.

There is nothing in the findings to overcome the presumption that appellant received the note in extinguish-

ment of the debt, or that the parties did not intend that it should have that effect.

The conclusion of law stated by the court was correct, and the judgment is affirmed.