## BARNARD v. FIRST NATIONAL BANK OF NEWPOINT, INDIANA.

[No. 8,897.   Filed February 18, 1916.   Rehearing denied April 21, 1916.]

1. CORPORATIONS.—*Sale of Stock.—Rescission.—Fraud.*—A sale induced by fraud is not void, but voidable; hence, where plaintiff was induced by fraud to purchase stock in an oil company, the purchase money could not be recovered until rescission and tender of return of the stock in case it was of any value.   p. 635.

2. BANKS AND BANKING.—*Deposits.—Payment.—Notice.*—Where plaintiff, who was induced through fraud to purchase stock in an oil company, paid for same by check drawn on his general deposit in defendant bank, and the seller, after depositing the check to his account, drew part of the funds and had the bank certify a ·check for the remainder, the bank was not liable to plaintiff for having honored the seller's check after notice from plaintiff not to do so, since in the absence of a prior rescission of the stock transaction, the title to the check given by plaintiff and the proceeds thereof passed to the seller and under the circumstances the bank would have been liable to him in case of its refusal to honor his check.   p. 636.

From Shelby Circuit Court; *Alonzo Blair*, Judge.

Action by Charles L. Barnard against the First National Bank of Newpoint, Indiana. From a judgment for defendant, the plaintiff appeals. *Affirmed.*

*John E. Osborne* and *Frank Hamilton*, for appellant.

*Bennett & Davidson*, for appellee.

IBACH, C. J.—On September 19, 1908, William Kluge sold a number of shares of stock in the German Mutual Oil and Gas Company to appellant. Twenty-five hundred dollars of the consideration was paid by a check drawn in Kluge's favor and on appellee bank. Kluge deposited the check with appellee and the amount thereof was charged to the account of appellant and credited to Kluge. Thereupon Kluge drew out of his account in cash

seventy-five dollars and drew a check to his own order for the balance, which was duly certified by appellee. Two days after this check for $2,425 had been drawn and certified, appellant notified appellee of certain fraudulent acts which he claimed Kluge had practiced upon him when the original check for $2,500 was obtained for the stock and notified appellee "not to honor the said check but to hold the deposit for appellant". Later in the day appellee on demand of Kluge paid the amount of the check to him. It is this payment after notice of the alleged fraud that forms the subject-matter of this controversy.

There are three separate paragraphs of complaint; the averments as to the false and fraudulent statements and representations made by 1. Kluge to appellant are in the main the same in each paragraph, so that our discussion will apply to each of said paragraphs alike. It is conceded by appellee that the fraud charged in either paragraph is sufficient to justify a rescission of the sale of the stock. We observe however that there is no charge that before or at the time of the notice relied on, appellant had rescinded such sale by returning or offering to return the certificates of stock which had been transferred to him by the vendor Kluge, nor is it averred that he had ever demanded the return of the check given therefor. It is apparent from appellant's brief that he takes the position that such procedure was wholly unnecessary. His argument is that the stock had no value and yet there is a direct averment in each paragraph that it was worth "not to exceed $200". He further contends that the sale of the stock to him was absolutely void and therefore the title to the purchase money and the check given therefor was never vested in Kluge

but remained 'at all times in appellant. This position is not tenable. The rule seems to be well settled that a sale induced by fraud is not void, but voidable. Until appellant rescinded the sale, the money which he had paid for the stock remained absolute in appellee. He would not be permitted to hold the shares of stock purchased, whatever may have been their value, and at the same time recover the amount of the check he had given in exchange for it. *Jarrett* v. *Cauldwell* (1911), 47 Ind. App. 478, 94 N. E. 790; *Thompson* v. *Peck* (1888), 115 Ind. 512, 516, 18 N. E. 16, 1 L. R. A. 201; *Woods* v. *Schearer* (1914), 56 Ind. App. 650, 105 N. E. 917; *Adam, Meldrum, etc., Co.* v. *Stewart* (1902), 157 Ind. 678, 61 N. E. 1002, 87 Am. St. 240.

It appears from each paragraph of the complaint that the original deposit made by appellant against which the Kluge check was

2. drawn and the deposit by Kluge were general deposits, neither was impressed with a trust, and as the stock transaction was voidable and not void and it had never been voided, the title to the check given for such stock and the proceeds thereof so far as appellant was concerned, rested in Kluge and when appellee received such general deposit of the money and such money became intermingled with other like funds in appellee's bank, the title to the money became absolute in appellee and at the same time it became the debtor of Kluge and impliedly contracted to honor his checks to the extent of the amount of the deposit.

The supreme court of Ohio, while considering like propositions, uses this language: "The relation of bank and general depositors is simply the ordinary one of debtor and creditor, not of agent and principal, or trustees and *cestui que trust.* * * *

The deposits become the absolute property of the bank, impressed with no trust, and the bank's right to use the money for its own benefit is immediate and continuous." *Cincinnati, etc., R. Co.* v. *Metropolitan Nat. Bank* (1896), 54 Ohio St. 60, 71, 42 N. E. 700, 31 L. R. A. 653, 56 Am. St. 700.

Appellee attaches much importance to the fact that in this case after the deposit had been made by Kluge, the check which he drew against it had been certified by appellee, but we are not inclined to give much force to this fact in the present case. The averments of this complaint reveal the same obligations resting upon appellee to honor the check of Kluge whether such check had been previously certified or not. The vice of this complaint is that it proceeds upon the theory that the stock transaction was absolutely void and not voidable and that courts of equity will follow the funds obtained in such a transaction as if they were trust funds or some tangible chattel easily separated and distinguished from others. And to support his contention that it was the appellee's duty to withhold payment of any of Kluge's checks after notice of the alleged fraud, appellant cites *Pearce* v. *Dill* (1897), 149 Ind. 136, 48 N. E. 788. This case shows that the original deposit was in the wife's name, that the husband had authority to draw checks in the transaction of the wife's business. He drew checks in settlement of his individual bucket shop deals. The check in controversy not being issued within the authority given the husband, no title passed to Pearce, the payee of such check, as he could obtain under the facts no greater title than the husband, who had no authority over the fund except as the business affairs of his wife required and the bank upon

which the check to Pearce was drawn, when it received it for deposit, knew all these facts. In the case of *Drumm-Flato Com. Co.* v. *Bank* (1902), 92 Mo. App. 326, Setter, the party who sold the cattle, had no title either tot he cattle nor the proceeds. It was therefore a void sale. Likewise in the case of *Alexander* v. *Swackhamer* (1886), 105 Ind. 81, 4 N. E. 433, 5 N. E. 908, 55 Am. Rep. 180, the court held that the contract under which Swackhamer parted with the title to the "pretended Johnson" was wholly void and therefore the title and ownership did not pass to said Johnson. In these, as in all the other cases cited by appellant, the original transaction between the parties was absolutely void and no title passed. It is quite apparent therefore that appellant has been misled by reason of his failure to recognize the distinction between a void transaction and one which is voidable, at the option of the party charging fraud. In the present case Kluge took title to the consideration which he received for the stock sold and was entitled to such consideration, whatever form it assumed, until appellant in some legal manner divested him of such title and as the stock is alleged to be of some value appellant could not again obtain that which he had parted with for the stock until he restored or offered to restore to Kluge the stock which he had received in the transaction. This he did not do until after payment of the check to Kluge.

Each paragraph of the complaint clearly discloses that appellee without notice of any fraud paid part of appellant's check when presented by the payee, in cash, certified the balance and paid that also several days thereafter. This transaction appears to have been *bona fide*. Appellee did nothing more with reference to the fund in

suit than the law required it to do.   Banks are required to honor checks of their general depositors so long as such depositor's funds are not drawn out, and damages are recoverable for refusal to pay the check of a customer who has sufficient funds in such bank subject to his check, so that it seems to us that under the facts of this case appellee owed no duty to appellant to make itself liable for damages for a refusal to pay Kluge's check by waiting until appellant might decide whether he wanted to return the stock and by proper action seek to regain the purchase money or ratify the transaction and sue Kluge for the damages sustained through the alleged fraud. The inherent necessities of the banking business require that obligations such as were created between appellee and Kluge be held valid.   To cast doubt upon such transactions would tend to disrupt the banking business of this country.   It would certainly be against public policy to subject a bank to the payment of costs and damages, that has received money in the usual course of business from a depositor, crediting him therewith and thereby entering into an implied contract to pay his checks, after it has refused payment of one of his checks simply because some other person, after such deposit was made, has claimed that he is entitled to the fund deposited rather than the depositor. Zane, Banks and Banking §209. *Founer* v. *Smith* (1891), 31 Neb. 107, 47 N. W. 632, 28 Am. St. 510, 11 L. R. A. 528; *Mt. Sterling Nat. Bank* v. *Greene* (1896), 99 Ky. 262, 35 S. W. 911, 32 L. R. A. 568.   Judgment affirmed.

NOTE.—Reported in 111 N. E. 451.   As to deposits made by fiduciary, see 42 Am. Rep. 168.   As to liability of bank for refusal to pay check when having funds therefor, see 15 L. R. A. 134.